No. 19,897.

Anthony P. Klimkiewicz, et al., v. Gretchen Karnick.

(372 P. [2d] 736)

Decided June 11, 1962.

Messrs. TILLY and SKELTON, for plaintiffs in error.

Messrs. FUGATE, MITCHEM, McGINLEY and HOFFMAN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

THE parties appear here in reverse order to their appearance in the trial court. The trial court dismissed the complaint against Helen M. Klimkiewicz, who is improperly included as a plaintiff in error in this court. We refer to the defendant in error as the plaintiff and to the plaintiff in error as defendant. The plaintiff is a school teacher; the defendant is a duly licensed and practicing chiropractor.

On October 14, 1959, plaintiff commenced this action seeking to recover damages for the alleged negligent and careless acts of the defendant in administering chiropractic treatments to the plaintiff.

In her complaint the plaintiff alleges that in October 1957 she employed the defendant to treat her and relieve her of neuralgia of the face, an ailment from which she was then suffering. She further alleges that on October 18, 1957, the defendant gave to plaintiff a purported chiropractic treatment, and in so doing carelessly manipulated her right arm causing her to suffer the loss of the use of the fingers of her right hand, and: " * * * that plaintiff's extensor carpi radialis longus became detached from its usual connection to the wrist because of the negligent acts of said defendant."

She further alleges that on January 11, 1958, the defendant gave her a further treatment and carelessly burned her right arm.

Because of these alleged negligent acts and consequent injuries plaintiff seeks general, special and exemplary damages in the total sum of $58,883.00.

The defendant filed his answer setting forth eight purported defenses; among others, a denial of negligence, consent, assumption of risk, unavoidable accident and the statute of limitations.

Trial was to a jury. The record is voluminous, consisting primarily of the testimony of the plaintiff, the defendant, and expert medical testimony.

The plaintiff testified that prior to October 11, 1957, she had been suffering from a cold, the flu, or neuralgia, and had received medication from her family physician. Response to the medication proving unsatisfactory, she, on October 11, sought the aid of defendant, and on that date was given heat treatment and chiropractic adjustment. This procedure was repeated on October 14 and again on October 18. On October 18, after completion of the heat treatment and chiropractic adjustment, plaintiff stated to defendant that the pain in her shoulders was much better, but that she still had some pain in her upper right arm; whereupon she claims that the defendant took plaintiff's right hand in his right hand, palm to palm, and manipulated the member by rotating the wrist back and forth several times, and then, according to plaintiff, without warning: " * * * all of a sudden with tremendous force he yanked my right hand while it was extended from my body and in a twisted position."

She further testified that as a result of the "yank" she immediately suffered sharp pain the whole length of her arm, which pain persisted for only a split second and her "hand and arm went instantly numb," and that the eventual result was a so-called wrist drop and a curling under of the distal portions of her middle and ring fingers and inability to straighten them in the normal manner.

The plaintiff called as witnesses in her behalf an orthopedic surgeon, and her family physician whose specialty is internal medicine. The orthopedic surgeon first examined plaintiff two and one-half months after

the alleged negligent conduct of the defendant. About three months after this examination he performed surgery on the plaintiff designed to remedy the wrist drop and finger curling from which plaintiff was then suffering.

Both experts expressed the opinion that plaintiff's condition of which she complained could have resulted from treatment such as that which plaintiff described as having been given to her on October 18, 1957. Neither of these doctors had had any experience in chiropractic. Plaintiff offered no evidence as to proper procedures to be followed in chiropractic treatment of ailments such as those of which plaintiff complained, or of the standards of care to be exercised by chiropractors in performing their professional duties.

The defendant testified in his own behalf and his version of the treatment given on October 18 was substantially the same as the version given by plaintiff, with one exception, and that is that he denied yanking her arm and stated that "chiropractically speaking, a mild firm extension was given to the arm." He further testified (and plaintiff admitted) that she made no outcry at any time during the treatment, and on completion thereof she went to the dressing room, dressed, opened her purse and paid him and got in her car and drove away without complaint or comment. About two months after being injured by the alleged "tremendous yank" the plaintiff called the defendant by telephone and requested receipts for amounts paid to him so that they might be listed as medical deductions on her income tax returns. On that occasion she said nothing of her alleged injuries.

On Saturday, January 11, 1958, plaintiff, accompanied by a friend-witness, called on defendant and told him of her injuries and exhibited to him her wrist and fingers. At that time the defendant made a partial examination of plaintiff's arm, wrist and fingers, and requested that she return on the following Monday for

further observation, diagnosis and treatment, if indicated. She never returned.

The defendant also called as witnesses in his behalf an orthopedic surgeon and two licensed chiropractors. The orthopedic surgeon, in answer to a question which assumes a "hypothetical woman" and assumes two legal size pages of facts — the essential ones being in dispute — expressed the opinion that the injuries of which plaintiff complains could, as a medical possibility, not a probability, have occurred from the manipulations as explained in the hypothetical question. Each of the chiropractors called expressed opinions that the plaintiff's injuries could not have been caused by the alleged acts of negligence.

During the taking of testimony and in the presence of the jury the plaintiff stipulated that: " * * * the technique that the defendant alleges he used on her was proper chiropractic treatment, that the method he demonstrated was proper."

At the close of plaintiff's case and again at the close of all of the testimony, the defendant moved for a directed verdict, contending that the evidence did not warrant submitting the matter to the jury. Those motions were denied.

Nineteen instructions were given to the jury. The defendant objected to several, which objections we shall discuss later.

The jury returned one verdict in favor of the plaintiff and awarded her compensatory damages in the amount of $23,500.00. A second verdict was in favor of the defendant, denying plaintiff's claim for $15,000.00 exemplary damages.

Following return of the verdicts, defendant's then counsel requested permission to withdraw from the case for the reason that defendant had employed present counsel. This request was granted.

Defendant filed a motion for a new trial, wherein

was pointed out numerous alleged prejudicial errors of the trial judge during the course of the trial.

We direct our attention to only two matters urged for reversal:

1. Admission, over objection, of testimony as to the difference in salaries paid by plaintiff's employer to teachers holding Bachelor of Science degrees and Master's degrees.

2. The giving, over objection, of Instructions No. 4, No. 6 and No. 10 concerning negligence.

The plaintiff testified that she had received a Bachelor of *Science* degree from the University of Colorado and that subsequent to obtaining that degree she had not been studying for any further degree. Her school principal testified that plaintiff had a Bachelor of *Arts* degree and over objections of defendant was permitted to testify that a teacher with a Master's degree received approximately $250.00 more per year salary than one with a Bachelor's degree.

■ Clearly, such testimony was improper and highly prejudicial. The error in admitting the testimony was further compounded and aggravated by the giving of Instruction No. 13, wherein the jury was instructed that damages might be awarded for impairment of her earning capacity in the future in language so broad as to include this $250.00 per year loss occasioned by her not having a Master's degree, and in the same instruction further instructing the jury that: " * * * the Plaintiff has a normal life expectancy of 21.37 years."

Life expectancy is predicated on present age. The record before us is devoid of evidence as to plaintiff's age.

Turning now to the second point, we find that the court gave to the jury, over objections of the defendant, the following instructions:

"INSTRUCTION NO. 4

"You are instructed that ordinary care is that degree of care which a person of ordinary intelligence and

prudence would exercise under similar circumstances to prevent injury to himself or to another.

## "INSTRUCTION NO. 6

"Negligence is the failure to exercise for the protection of others the care and caution that would be exercised by an ordinarily prudent person under the same circumstances. The failure to do what an ordinarily careful and prudent person would have done under all of the circumstances of the case, or the doing of something that an ordinarily prudent person would not have done under all of the circumstances of the case, is negligence.

## "INSTRUCTION NO. 10

"That each of you jurors are to exercise and bring to this cause all of your knowledge and skill in the course of every day events and to apply said knowledge to the cause before you, in determining whether the plaintiff's allegations and proof established by a preponderance of the evidence that the defendant did cause the injury complained of by the plaintiff, by negligently and wrongfully manipulating the arm of the plaintiff and that said manipulation if negligent and wrongful was the proximate cause of the injury. However, if you find on the evidence that the defendant's manipulation of the plaintiff's arm, even if injury resulted, was done with the exercise of ordinary care and skill exercised by other practitioners of his school of healing art, then you shall find for the defendant."

These three instructions should not have been given. They could only serve to confuse the jury.

█ In this case the plaintiff is not proceeding against a "person of ordinary intelligence and prudence," "an ordinarily prudent person." Rather, she is proceeding against a person in whom she had confidence as being one having special knowledge and skill in his field of endeavor; she is proceeding against one whose aid she had enlisted, and whom she had employed on a con-

tractual basis in the hope and expectation of being relieved of her then affliction.

The obligation of one undertaking such employment is well stated in *Bonnet v. Foote,* 47 Colo. 282, 107 Pac. 252, wherein this court said:

"In the absence of a special contract, the law implies that a surgeon employed to treat an injury contracts with his patient, first, that he possesses that reasonable degree of learning and skill which is ordinarily possessed by others of the profession; second, that he will use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed; and third, that he will use his best judgment in the application of his skill in deciding upon the nature of the injury and the best mode of treatment. * * * ."

The above language is quoted with approval in *Tadlock v. Lloyd,* 65 Colo. 40, 173 Pac. 200.

The plaintiff does not claim improper diagnosis; she expressly admits that the technique that the defendant alleges he used was proper chiropractic treatment and that the method which he demonstrated as that used was proper. Thus we find that plaintiff's complaint is confined to the fact that defendant gave her arm a "tremendous yank." This was part of the admitted "proper chiropractic treatment." In giving this "tremendous yank" as related by plaintiff, or in applying "a mild firm extension * * * to the arm," as related by the defendant — no matter which version is correct — the defendant's actions were those of a doctor under contractual obligations, and the propriety of the same must be measured by the rules governing one in his position.

Instructions No. 4 and No. 6 are wholly inapplicable to the fact situation presented to the jury.

The general rule defining the duties of a physician to his patient are set forth in 41 Am. Jur. 200, §82:

"It is the universal rule that a physician is liable to

his patient for a failure to exercise requisite skill and care. By that it is meant that a physician must possess that reasonable degree of learning, skill, and experience which ordinarily is possessed by others of his profession, and that he must exercise reasonable and ordinary care and diligence in the exertion of his skill and the application of his knowledge, and exert his best judgment as to the treatment of the case intrusted to him — in short, a physician is bound to bestow such reasonable and ordinary care, skill, and diligence as physicians and surgeons in good standing in the same neighborhood, in the same general line of practice, ordinarily have and exercise in like cases. * * * ."

And §85:

"It is the general rule that a physician is entitled to have his treatment of his patient tested by the rules and principles of the school of medicine to which he belongs, and not by those of some other school, because a person professing to follow one system or school of medicine cannot be expected by his patient to practice any other, and if he performs the treatment with ordinary skill and care in accordance with his school of practice, he is not answerable for bad results. This general rule has been applied to practitioners of the schools of homeopathy, allopathy, osteopathy, chiropractic, and Christian Science healing. * * * ."

The judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE DAY and MR. JUSTICE SUTTON concur.