Argued March 5, affirmed September 10, 1969

SUTTON, *Appellant, v.* COOK, *Respondent.*

458 P2d 402

*Harrison M. Weatherford* and *William E. Brickey*, Albany, argued the cause for appellant. With them on the briefs were Weatherford, Thompson, Horton & Jordan, Albany.

*Frank E. Day*, Portland, argued the cause for respondent. With him on the brief were Reiter, Day, Wall & Bricker.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and LANGTRY,* Justices.

O'CONNELL, J.

This is a malpractice action in which plaintiff seeks to recover damages from defendant, a licensed chiropractor, for injuries alleged to have resulted from defendant's negligence in diagnosing and treating a fractured vertebra. The jury returned a verdict for defendant. Plaintiff appeals.

Plaintiff consulted defendant at 9:00 a.m. on July 31, 1964. Plaintiff complained of lower back pains, re-

---

* Langtry, J., did not participate in this decision.

lating that she had fallen on her hips and back onto a cement floor at a Corvallis cannery at 2:00 a.m. of the same day. Defendant examined plaintiff, administering certain tests to ascertain the extent of her injury; he did not take an X-ray at this time. He diagnosed plaintiff's injury as a "lumbar compression injury" and at that time he administered both a diathermy and a manipulative treatment. On plaintiff's fourth visit defendant took X-rays and confirmed that there was a compression or compaction of the second lumbar vertebra, sometimes described in medical practice as a "compression fracture." Defendant informed plaintiff that she had a compression injury but did not use the term "fracture." Defendant continued treating plaintiff with manipulative treatments until January 2, 1965.

Plaintiff visited her own physician in November of 1964 but did not mention her back injury. Her physician testified that she told him that she did not go to him initially because she thought he might put her in the hospital. In July, 1965, plaintiff was given a physical examination by her own physician, at which time he discovered she had had a fracture of the second lumbar vertebra. The fractured vertebra was admittedly healed at the time this action was brought but plaintiff claims that the nature of the treatments administered by defendant caused more "spurring" in the healing process and more pain and disability than would have occurred had she been treated in a "non-negligent" manner.

■ Plaintiff contends that the trial court erred in instructing the jury on the standard of care and skill defendant was required to meet in diagnosing and treating plaintiff's injury. The trial court instructed the jury that in determining whether defendant was

negligent the test to be applied was whether defendant used the degree of professional care, skill and prudence which an ordinary careful, skillful and prudent chiropractor in general practice in the community of Albany, Oregon would have used under the same or similar circumstances.

It is plaintiff's position that defendant, in treating a fracture, should be held to the standard of care applicable to a physician. Plaintiff reasons that by statute the treatment of fractures is "within the purview of the medical practice only." Plaintiff derives this conclusion from ORS 677.085 (4), which provides in part as follows:

> "A person is practicing medicine if he does one or more of the following:
>
> "* * * * *
>
> "(4) Offer or undertake to diagnose, cure or treat in any manner, or by any means, methods, devices or instrumentalities, any disease, illness, pain, wound, fracture, infirmity, deformity, defect or abnormal physical or mental condition of any person."

■ It is made clear, however, by ORS 677.070 that the chapter regulating the practice of medicine by physicians does not apply to persons practicing the other healing arts. ORS 677.070 provides as follows:

> "This chapter is designed solely for the regulation of the practice of medicine and does not apply to the regulation of the other healing arts or the corrective art of optometry; and chapter 470, Oregon Laws 1967, shall not change or limit the rights of persons lawfully practicing such healing arts or the corrective art of optometry with respect to the practice of their professions as presently authorized."

This limitation on the application of Chapter 677 is made more specific in ORS 677.060 (6) and (7):

"This chapter does not affect or prevent the following:

"* * * * *

"(6) The practice of dentistry, optometry, chiropractic, naturopathy, podiatry or cosmetic therapy, by any person authorized by this state. Nothing in subsection (5) of ORS 677.085 prevents the use of the words 'Doctor' or 'Specialist,' or any abbreviation or combination thereof, or any letters or words of similar import by any person duly licensed to practice optometry within Oregon.

"(7) The practice of the religion of persons who endeavor to prevent or cure disease or suffering by prayer or other spiritual means in accordance with the tenets of any church. Nothing in this chapter interferes in any manner with the individual's right to select the practitioner or mode of treatment of his choice, or interferes with the right of the person so employed to give the treatment so chose; provided that sanitary laws, rules and regulations are complied with."

The fact, then, that the diagnosis or treatment of a fracture constitutes the practice of medicine under ORS 677.085 does not make unlawful the diagnosis or treatment of a fracture by a chiropractor.

■ Nor do we find any prohibition against the diagnosis and treatment of fractures in the chapter (ORS Ch 684) regulating the practice of chiropractic. There is nothing in ORS Ch 684 which purports to limit chiropractors to the diagnosis and treatment of certain ailments or disorders.① The only limitations in Chap-

---

① See Ison v. McFall, 55 Tenn App 326, 358, 400 SW2d 243, 257 (1964); "* * * [I]n view of [our statute] we construe the field of chiropractic to be limited to the treatment of those illnesses and diseases * * * which doctors of chiropractic reasonably believe can be aided by the manual manipulation of the spine."

ter 684 on the practice of chiropractic are those relating to the *methods* of treatment. One such limitation is found in ORS 684.010 (2) defining chiropractic:

"(2) 'Chiropractic' is defined as that system of adjusting with the hands the articulations of the bony framework of the human body, and the employment and practice of physiotherapy, electrotherapy, hydrotherapy and minor surgery."

The only other limitation on treatment is found in ORS 684.110 (3), which provides:

"(3) No person practicing under this chapter shall administer or write prescriptions for, or dispense drugs, practice optometry or naturopathy or do major surgery."

The foregoing statutory provisions make it eminently clear that plaintiff was not entitled to his requested instruction to the effect that the treatment of fractures was within the purview of medical practice only.

■ Plaintiff urges us to adopt a rule that in the diagnosis and treatment of the diseases or physical abnormalities of man for which there is a recognized treatment by physicians a chiropractor must be held to the accepted standard of medical practice. There are cases supporting plaintiff's position, including *Kelly v. Carroll*, 36 Wash2d 482, 219 P2d 79, 19 ALR2d 1174 (1950) relied upon by plaintiff, but we find these cases unacceptable.[9] We have adopted the contrary view in our own cases. We have held that a drugless healer is entitled to have his conduct in the treatment of his patients tested by standards applicable to the school or system to which he belongs and not by the

[9] The reasoning in Kelly v. Carroll and similar cases has been criticized. See Hansler, The Standard of Care of the Drugless Healer, 27 Wash L Rev 38 (1952); Note, 10 Wyo L J 124 (1956).

standards of medical practice.[9] Illustrative is *Hilgedorf v. Bertschinger*, 132 Or 641, 285 P 819 (1930) where we said, at pp. 645-46:

"If a patient seeks to be treated by a naturopath, and such practitioner follows the methods usually employed by a naturopath, such practitioner is not negligent simply because a regular licensed physician of another school would have treated the patient for the particular disease by some other method."

This principle was applied in *Sheppard v. Firth*, 215 Or 268, 334 P2d 190 (1959) where it was held error to permit a physician to testify that manipulations performed by a chiropractor were not the proper treatment for a subacute muscle strain in the lumbosacral area since this would violate the rule that a practitioner of the healing arts is entitled to have his method of treatment tested by the standards of care and skill applicable to the school to which he belongs.[10]

■ Plaintiff relies upon *Dowell v. Mossberg*, 226 Or 173, 355 P2d 624, 359 P2d 541 (1961). The case is distinguishable. There we reaffirmed the general principle that a person practicing one of the healing arts must exercise only that standard of care and skill which an ordinary practitioner in the same school in that community would exercise. In that case the de-

---

[9] This view is adopted by most courts. See Anno: Liability of Drugless Practitioner or Healer for Malpractice, 19 ALR2d 1188 (1951); Anno: Malpractice—Witnesses—Competency, 85 ALR2d 1022 at 1026 (1962); Note, 4 Ga B J 48 (1941); Note, 26 Notre Dame Law 685, 688 (1951); Note, 9 Utah L Rev 705 (1965); Note, 10 Wyo L J 124 (1956).

[10] In explanation the court added: "Therefore, it is apparent the courts are not concerned with the merits of the various systems that seek to relieve human ailments. It is sufficient to state that many of our citizens believe in the efficacy of drugless treatments and secure the services of those practicing them." 215 Or at 272.

fendant held himself out as a general diagnostician for all types of human ailments including diabetes. The evidence showed that the procedures employed by chiropractors in the diagnosis of diabetes were generally similar to those described by physicians. We held that the defendant was required to exercise that degree of skill and care required of an ordinary chiropractor in the community. We also held that it was not error to permit medical doctors to testify as to the proper procedure in diagnosing, but this was based upon the well recognized principle that it is proper to allow a practitioner of one school of the healing arts to testify as to the standard of care and skill applicable to another school when the procedures of both schools are substantially the same.[9]

Plaintiff's other assignments of error relating to requested instructions on defendant's duty toward plaintiff incorporate the erroneous view that chiropractors are held to the standards of care and skill of physicians in the treatment of diseases. Therefore, it was not error to refuse to give such instructions.

The judgment of the trial court is affirmed.

---

[9] James v. Falk, 226 Or 535, 360 P2d 546, 85 ALR2d 1014 (1961); Sheppard v. Firth, 215 Or 268, 334 P2d 190 (1959); 85 ALR2d 1022 at 1026 (1962); Note, 4 Ga B J 48 (1941); Note, 26 Notre Dame Law 685 at 689 (1951); Note, 9 Utah L Rev 705 at 720 (1965); 1952 Wis L Rev 567.