(No. 51204.—

ROBERT J. DOLAN, Appellant, v. M. A. GALLUZZO,
Appellee.

*Opinion filed October 19, 1979.*

WARD, J., and GOLDENHERSH, C.J., dissenting.

O'Brien, Healy, Wade, Abate & McNamara, of Rockford (Alex M. Abate and Mary P. Gorman, of counsel), for appellant.

Thomas, Kostantacos, Traum & Reuterfors, of Rockford (Kenneth W. Traum, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The circuit court of Winnebago County permitted the plaintiff, Robert J. Dolan, and the defendant, Dr. M. A.

Galluzzo, to take an interlocutory appeal from an order *in limine*. The appellate court affirmed (62 Ill. App. 3d 832), and we granted the plaintiff leave to appeal (65 Ill. 2d R. 315).

The plaintiff brought a malpractice action against the defendant, a licensed podiatrist (Ill. Rev. Stat. 1973, ch. 91, par. 73 *et seq.*), for an allegedly negligent osteotomy (surgical cutting of a bone) performed on his left foot in 1974. The plaintiff also alleged the defendant failed to obtain his informed consent because the defendant had not indicated the possible complications of the osteotomy. Upon learning of the plaintiff's intention of having orthopedic surgeons testify and aware of significant disagreement between them and podiatrists, the defendant moved *in limine* to exclude all testimony by physicians and surgeons. The circuit court, after denying the first motion *in limine* and acting upon the second, ordered the plaintiff *not* to present "the testimony of any physician and surgeon for the purpose of proving" the standard of care a podiatrist owes a patient, or for the purpose of demonstrating that the failure of the defendant to inform the plaintiff "of the reasonable [*sic*] foreseeable risks of the procedure *** was or was not consistent with the standard of care owed by a podiatrist to a patient."

The circuit court's two certified issues, concerning the standard of care and informed consent, can be reduced to the basic issue of whether or not a plaintiff may establish the standard of care a podiatrist owes a patient by offering the testimony of a physician or surgeon, or another expert other than a podiatrist. The appellate court and the parties correctly characterize this narrow issue as a case of first impression in Illinois.

Because the State has "long recognized podiatrists as a separate and distinct profession of healers who are severely limited in their practice and whose educational requirements are substantially different than those of physicians,"

and because "the treatments utilized by the podiatric profession *** are substantially different from those utilized by physicians and orthopedic surgeons" (a view in which the plaintiff and defendant concur), the appellate court concluded the "defendant has the right to have his competence judged by the standards of his own distinct profession and not by those of any other." (62 Ill. App. 3d 832, 836.) The plaintiff contends that the expert testimony of a physician would simply aid the fact finder in determining the standard of care a podiatrist owes a patient. He further suggests that the podiatric standard of care may be lower than that which should be owed; if so, the testimony of a physician would help establish that. The defendant counters that the plaintiff voluntarily consulted the defendant. Further, the defendant points out, the legislature has expressly recognized the existence of various schools of medicine (Ill. Rev. Stat. 1973, ch. 91, par. 1 *et seq.*); accordingly, a practitioner should be judged by the standards of his expressly recognized school.

In medical malpractice suits, the plaintiff must establish the standard of care through expert testimony. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256; *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423. See Illinois Pattern Jury Instructions, Civil, No. 105.01 (2d ed. 1971).) One commentator has stated that the standard of care for a podiatrist (or chiropodist) is the exercise of "such reasonable and ordinary skill and diligence as are ordinarily exercised by the members of the profession in good standing *** in the same general line of practice." (2 J. Dooley, Modern Tort Law 601 (1977). Accord, Annot., 80 A.L.R.2d 1278 (1961).) The clear implication of this statement is that "a practitioner of one school of medicine is not competent to testify as an expert in a malpractice action against a practitioner of another school of medicine." (Annot., 85 A.L.R.2d 1022, 1023 (1962). Accord, *e.g., Bender v. Dingwerth* (5th Cir. 1970), 425 F.2d 378, 384, applying Texas law; *Hart v. Van Zandt* (Tex. 1965),

399 S.W.2d 791, 797; *Klimkiewicz v. Karnick* (1962), 150 Colo. 267, 275, 372 P.2d 736, 740; *Sheppard v. Firth* (1959), 215 Or. 268, 271-72, 334 P.2d 190, 192; *Bryant v. Biggs* (1951), 331 Mich. 64, 49 N.W.2d 63.) "School of medicine" has not been very specifically defined in the case law or treatises. A "nutshell" description is set out in 70 C.J.S. *Physicians and Surgeons* sec. 44, at 953 (1951), and quoted in *Bryant v. Biggs* (1951), 331 Mich. 64, 73, 49 N.W.2d 63, 68:

> "A school of medicine relates to the system of diagnosis and treatment. While the law recognizes that there are different schools of medicine, it does not favor, or give exclusive recognition to, any particular school or system of medicine, as against the others. When a patient selects a practitioner of a recognized school of treatment he adopts the kind of treatment common to that school, or, as otherwise stated, he is presumed to elect that the treatment shall be according to the system or school of medicine to which such practitioner belongs."

See also Joost, *Schools of Medicine, Medical Malpractice in Illinois,* 44 Chi.-Kent L. Rev. 115 (1967), and Comment, *Medical Malpractice—Expert Testimony,* 60 Nw. U.L. Rev. 834, 839-42 (1966).

The rationale of the general rule restricting expert testimony regarding the standard of care owed by a practitioner of a certain school of medicine is that "there are different schools of medicine with varying tenets and practices, and that inequities would be occasioned by testing the care and skill of a practitioner of one school of medicine by the opinion of a practitioner of another school" (85 A.L.R.2d 1022, 1023; see citations above). The practitioner of a particular school of medicine is entitled to have his conduct tested by the standards of his school. *E.g., Sutton v. Cook* (1969), 254 Or. 116, 121-22, 458 P.2d 402, 404. *Cf.* generally Annot., 31 A.L.R.3d

1163 (1970), and *Little v. Cross* (1976), 217 Va. 71, 225 S.E.2d 387, which deal with the competence of a general medical practitioner to testify against a specialist. *Cf.* also *Burrow v. Widder* (1977), 52 Ill. App. 3d 1017, 1028-29, and *Skaug v. Johnson* (1975), 29 Ill. App. 3d 238, 242.

Illinois statutes (Ill. Rev. Stat. 1973, ch. 91, par. 1 *et seq.,* and Ill. Rev. Stat. 1977, ch. 111, par. 3401 *et seq.*) provide for the regulation of practitioners of medicine and surgery, physical therapy, nursing, pharmacy, dental surgery, podiatry, optometry, etc. This is a clear expression by the legislature of public policy to recognize and regulate various schools of medicine. The various acts regulating the health professions (Ill. Rev. Stat. 1973, ch. 91; Ill. Rev. Stat. 1977, ch. 111) provide for different training, and regulate the treatment each profession may offer. (Also, the Medical Practice Act provides that this "Act shall not apply to dentists, pharmacists, optometrists, or other persons lawfully carrying on their particular profession ***." (Ill. Rev. Stat. 1973, ch. 91, par. 16v; Ill. Rev. Stat. 1977, ch. 111, par. 4474. See *Sutton v. Cook* (1969), 254 Or. 116, 458 P.2d 402.)) We simply are not disposed to provide for what, in effect, may result in a higher standard of care when the legislature, by recognizing various schools of medicine, has not done so. To do so would not only be unfair to podiatrists (*i.e.,* to allow practitioners of other schools to testify regarding the standard of care podiatrists owe), but it would also assume that science and medicine have achieved a universal standard of treatment of disease or injury. Such is not the case. In its wisdom, the legislature has recognized a fundamental tenet of contemporary life: no one person, group or school has yet succeeded in abstracting a universal medical method from the many changing methods used in science and medicine.

The plaintiff maintains, on the basis of *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, we should permit the jury "to hear expert testimony that podiatrists do not have an adequate

standard of care or an adequate procedure of obtaining informed consent." In *Darling,* an action against a hospital for allegedly negligent treatment, this court concluded that a hospital's duty is not exclusively determined by the customary care hospitals in the community offer. (33 Ill. 2d 326, 331-32.) State licensing regulations, hospital accreditation standards, and the defendant's bylaws were properly admitted. However, *Darling* is not so broad and should not be extended as the plaintiff contends. There the defendant was a hospital. Here the defendant is a professional. Only recently in a malpractice action against two doctors we held that the standard of care must be established by expert testimony. *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256.

We therefore hold that, in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein. Once the fact of such license has been established, it lies within the sound discretion of the trial court to determine if the witness is qualified to testify as an expert regarding the standard of care. (*People v. Park* (1978), 72 Ill. 2d 203, 209.) We recognize that a physician or surgeon may also be a licensed podiatrist and may be sufficiently qualified to testify as to the standard of care owed by podiatrists. The order of the trial court is therefore overbroad in precluding the possible testimony of a physician or surgeon under all circumstances. Also, we agree with the appellate court that "a physician or orthopedic surgeon could offer competent, expert testimony as to [his] diagnosis of the plaintiff's present condition as well as [his] prognosis for [plaintiff's] recovery." 62 Ill. App. 3d 832, 836.

Since the trial court order was overbroad, it and the judgment of the appellate court affirming it are vacated, and the cause is remanded to the circuit court of Winnebago County for further proceedings consistent with this opinion.

*Vacated and remanded.*

MR. JUSTICE WARD, dissenting:

I believe that the majority confuses the existence of various schools of medicine that have differing notions as to the origin and treatment of disease with the simple fact that the legislature has provided for the regulation of the various medical professions and occupations. An illustration of this confusion is the majority's statement that the legislature, by providing for the regulation of physical therapy, nursing, optometry and other medical activities, was expressing a public policy "to recognize and regulate various schools of medicine." This is of course wrong. The majority then concludes, and mistakenly, I consider, that in order to qualify as an expert witness one must have a license in the profession or occupation where the standard of care is in question. The holding of the license is held to be the touchstone of expert qualifications. No matter how well qualified through education, training and experience the prospective witness may be, the trial court has no discretion to allow expert testimony unless the witness is the holder of a license.

The holding here is that one would be unable to testify concerning podiatric standards of care without possessing a license in podiatry. Thus even a professor in a school of podiatry who did not happen also to be licensed to practice podiatry would not be able to testify as to the standards of care required of a podiatrist. Under the holding a physician would be unable to testify to nursing standards of care even though nurses operated under his supervision or to testify to standards for midwives, and this because the physician was not licensed as a nurse or a midwife.

The circumstances in *Walker v. Bangs* (1979), 92 Wash. 2d 854, 601 P.2d 1279, closely resemble those here. In that case the court held that the trial court had erred when it refused, in a malpractice trial, to admit expert testimony on the standard of care applicable to attorneys on the ground that the proposed witness, who taught

in a Washington law school, had not been licensed to practice law in that State.

I believe that the requiring of a license in the field where the standards of care are under examination is to apply a purely mechanical and formalistic rule. I would adhere to the generally accepted rule that whether a witness is qualified by special skill, knowledge and experience as an expert witness is within the sound discretion of the trial judge and that this exercise of discretion is reviewable only for abuse. *Evanston Best Co. v. Goodman* (1938), 369 Ill. 207, 212; McCormick, Evidence sec. 13 (2d ed. 1972); Gard, Illinois Evidence secs. 218, 219 (1963).

MR. CHIEF JUSTICE GOLDENHERSH joins in this dissent.