OTIS MARSHALL *v.* YALE PODIATRY GROUP ET AL. (3594)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued June 11—decision released August 20, 1985

*Diane D. Ruben,* with whom, on the brief, was *Andrew R. Lubin,* for the appellant (plaintiff).

*Dion W. Moore,* for the appellees (defendants).

DUPONT, C. J. This case presents the question of whether an orthopedic surgeon is qualified to testify as an expert as to the standard of care required in connection with the performance of foot surgery by a licensed podiatrist certified in the field of surgery.

This is a medical malpractice action arising out of surgery performed by the defendant Jeffrey Yale, a licensed podiatrist in Connecticut, on the plaintiff's right and left feet. Yale is an agent and employee of the defendant Yale Podiatry Group, P.C. His examination of the plaintiff disclosed a hallux limitus of the right foot (restricted, painful range of big toe motion) and a tailor's bunion of the left foot. To alleviate the plaintiff's condition, Yale operated on the plaintiff implanting an artificial joint in the plaintiff's right, big toe and removing a portion of the plaintiff's left small toe.

At trial, the plaintiff called Urelich Weil, an orthopedic surgeon, to testify to the applicable standard of care for such surgery. The defendants objected to Weil's testifying, claiming that he was not qualified to testify as to the applicable standard of care. The trial court sustained the defendants' objection and the plaintiff excepted. Weil was the plaintiff's only expert witness and therefore the plaintiff rested since without his testimony the plaintiff could not prevail.[1] See *Pisel* v.

_____

[1] The defendants argue that the plaintiff waived his right to claim error on the issue of whether the plaintiff's expert was qualified to testify since

*Stamford Hospital,* 180 Conn. 314, 334, 430 A.2d 1 (1980). The defendants moved for a directed verdict, which the trial court granted. The plaintiff moved to set aside the verdict, which the trial court denied and the plaintiff appealed.

The standard of care to which physicians and surgeons are held is "that which physicians and surgeons in the same general neighborhood and in the same general line of practice ordinarily have and exercise in like cases." *Force* v. *Gregory,* 63 Conn. 167, 169, 27 A. 116 (1893). When the court formulated that test, the "same general neighborhood" was interpreted as a territorial limitation restricted to the confines of the community in which the doctor practiced. In *Geraty* v. *Kaufman,* 115 Conn. 563, 162 A. 33 (1932), the "general neighborhood" was considered the state of Connecticut. It has now been broadened to include the entire nation. *Van Steensburg* v. *Lawrence & Memorial Hospitals,* 194 Conn. 500, 506–507 n.8, 481 A.2d 750 (1984). These cases reveal a trend towards the liberalization of the rules involving the qualifications of medical experts.

Although the issue of this case does not involve the geographical limitation on medical expert testimony, but rather the "general line of practice" limitation on expert medical testimony offered in a medical malpractice action, the liberalization of the evidentiary rules regarding the former limitation are relevant in analyzing the latter limitation.

Our analysis of cases starts with *Fitzmaurice* v. *Flynn,* 167 Conn. 609, 356 A.2d 887 (1975), where the

the directed verdict resulted from the plaintiff's tactical decision to rest. When the defendants filed their brief, the plaintiff moved to strike this portion of their brief since the defendants did not file a preliminary statement of issues presenting for review alternate grounds upon which the judgment might be affirmed. Practice Book § 3012. This court denied that motion without prejudice to its renewal at this time. This court now decides that the defendants' claim is not properly before the court and therefore will not be considered.

court found that the trial court erred in excluding the plaintiff's expert, a practicing surgeon specializing in breast cancer surgery, from testifying as to the proper medical standards of practice among obstetrician-gynecologists pertaining to breast examinations. In that case, the testimony was "that breast lump examinations are performed in exactly the same manner by obstetrician-gynecologists and surgeons; and that these two specialties are identical with respect to breast lump examination and diagnosis." Id., 615. The threshold question of admissibility is governed by the scope of the witness' knowledge and not the artificial classification of the witness by title. Id., 618.

Our appellate courts have had occasion to address this issue since that case. In *Katsetos* v. *Nolan,* 170 Conn. 637, 646–47, 368 A.2d 172 (1976), the court held that where the evidence presented at trial showed that the treatment in question falls within the field of all medical specialties and the minimum standard of care was common to all specialties, the plaintiff's medical experts were competent to testify as to the applicable standard of care, although not specialists in the same field as the defendants. In *Buckley* v. *Lovallo,* 2 Conn. App. 579, 584–86, 481 A.2d 1286 (1984), the plaintiff offered two plastic surgeons as expert witnesses on the standard of care for performing a breast reduction operation, although the defendant performing the surgery was a general surgeon. That defendant moved for a directed verdict, arguing that the plaintiff failed to present sufficient evidence to establish the applicable standard of care. The trial court denied that motion and was upheld on appeal. One of the plastic surgeons testified that the standard of care applicable for performing the surgery was the same for plastic surgeons and general surgeons. Id., 585. The common thread tying these decisions together is that where the evidence indicates that the specialties overlap and the

applicable standard of care is common to each, a medical expert from either of the overlapping groups who is familiar with that common standard is competent to testify as to the standard of care.

Connecticut has not previously considered whether an orthopedic surgeon can testify as an expert against a podiatrist in a malpractice action. Other jurisdictions, however, have addressed this issue, reaching varying decisional results. The Ohio Supreme Court, citing a Connecticut case, *Katsetos* v. *Nolan,* supra, held that the plaintiff's medical expert, a podiatrist, was competent to testify as to the alleged malpractice, applying and failing to remove a cast which was too tight, by the defendant orthopedic surgeon. *Alexander* v. *Mt. Carmel Medical Center,* 56 Ohio St. 2d 155, 383 N.E.2d 564 (1978). The record disclosed that the application and removal of casts is an area where these fields of medicine overlap. The court, therefore, concluded that the podiatrist was qualified to testify as an expert. Id., 162. The Georgia Court of Appeals addressed this issue, holding that where the evidence indicates the fields overlap and the methods of treatment are the same for the schools involved, an orthopedic surgeon can testify as an expert as to the standard of care which must be exercised by a podiatrist. *Sandford* v. *Howard,* 161 Ga. App. 495, 288 S.E.2d 739 (1982). The California Court of Appeals has addressed the analogous issue of whether a podiatrist can testify as to the applicable standard of care of an orthopedic surgeon performing foot surgery, holding that he can. *Chadock* v. *Cohn,* 96 Cal. App. 3d 205, 157 Cal. Rptr. 640 (1979). The record revealed a familiarity with the surgery and contained testimony that the fields overlapped. Id., 209–14.

There is, however, a line of authority excluding such testimony. The South Carolina Court of Appeals has held that an orthopedic surgeon was not competent to testify as to the applicable standard of care in a mal-

practice action against a podiatrist. *Botehlo* v. *Bycura,* 282 S.C. 578, 584–87, 320 S.E.2d 59 (S.C. App. 1984). The record there revealed that the orthopedic surgeon had never performed ambulatory foot surgery nor was he familiar with the surgical procedure performed. Id., 65. Likewise, the North Carolina Court of Appeals has excluded the testimony of an orthopedic surgeon on the applicable standard of care in a malpractice action against a podiatrist. *Whitehurst* v. *Boehm,* 41 N.C. App. 670, 255 S.E.2d 761 (1979). The record also revealed an unfamiliarity with the field of practice. Id., 676. The Illinois Supreme Court has considered whether "a plaintiff may establish the standard of care a podiatrist owes a patient by offering the testimony of a physician or surgeon, or another expert other than a podiatrist." *Dolan* v. *Galluzzo,* 77 Ill. 2d 279, 281, 396 N.E.2d 13 (1979). The court held that "in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein." Id., 285. The dissent casts this as a mechanical and formalistic resolution of the issue. Id., 287. (Ward, J., dissenting.)[2]

The decisions allowing and excluding expert testimony in this area generally focus on the expert's familiarity with the school of medicine and the procedures involved. To resolve this issue in the context of this case requires an examination of the testimony proffered to qualify Weil as an expert, in order to determine whether he possessed a sufficient familiarity with the school of medicine and the procedures involved.

In the absence of the jury, Weil was extensively examined regarding his qualifications to testify as an expert. He testified that he has performed hundreds of operations on the feet, that he was familiar with the surgical procedure performed on the plaintiff's feet,

---

[2] A reported decision of the New York trial court excluded a general surgeon from testifying as to the standard of care of podiatrists. *Darby* v. *Cohen,* 101 Misc. 2d 516, 421 N.Y.S.2d 337 (1979).

and that he was familiar with the treatment, both conservatively and surgically, of keratosis and calluses upon the feet. Further, he testified that he had worked with almost all of the podiatrists in the New Haven area. They had referred patients to him for treatment and he had referred patients to them, generally for conservative treatment, but occasionally for surgical procedures performed in a hospital. He had observed and performed operations where more than one head and neck of a metatarsal was removed for neurological disorders of the feet. Here, the defendant podiatrist removed the fifth metatarsal of the plaintiff's left foot. In addition, the doctor testified that he had performed implant operations and was familiar with implants into the foot and toes, but had never performed an implant operation on the toes. He stated that he was familiar with the standard of care applicable to the treatment of keratosis and bunions and that the standard of care did not change simply because a podiatrist rather than an orthopedic surgeon treated the patient.

The defendant podiatrist testified that, in terms of foot surgery, orthopedic surgeons and podiatric surgeons generally performed the same procedures. He admitted that a certain medical text on surgery on the feet was authoritative. Weil expressed a familiarity with that text insofar as it pertains to the plaintiff's preoperative condition and the surgical and conservative nonsurgical techniques for the treatment of the plaintiff's condition. Although Weil had never performed or assisted in the surgical procedures involved in the treatment of the plaintiff's malady, this was so because he questioned the use of such procedures. The extensive offer of proof discloses that the plaintiff's expert had the requisite familiarity with the particular school of medicine and the procedure involved to

substantiate that he had the necessary qualifications to give his opinion as to the standard of care.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.