**Kristi TAPP, Co–Administrator of the Estate of Kyndall Paige Ard; and Donald Ard, Co–Administrator of the Estate of Kyndall Paige Ard, Appellants,**

v.

**OWENSBORO MEDICAL HEALTH SYSTEM, INC., Appellee.**

No. 2008–CA–000848–MR.

Court of Appeals of Kentucky.

April 10, 2009.

Charles S. Wible, Owensboro, KY, for appellant.

Ronald G. Sheffer, William K. Burnham, Louisville, KY, for appellee.

Before ACREE and MOORE, Judges; KNOPF,[1] Senior Judge.

## OPINION

ACREE, Judge.

Kristi Tapp and Donald Ard, Co–Administrators of the Estate of Kyndall Paige Ard, (the Estate) appeal from the February 25, 2008, final judgment of the Daviess Circuit Court dismissing their negligence action against Dr. Stephanie Russell (formerly Luellen) and Owensboro Medical Health Systems (OMHS) following a jury verdict in favor of the doctor and hospital. Because we find that the trial court did not abuse its discretion in making an evidentiary ruling pursuant to Kentucky Rules of Evidence (KRE) 702, we affirm.

Kyndall Ard was admitted by her pediatrician, Dr. Russell, to the pediatrics floor of OMHS at approximately 3:50 p.m. on February 19, 2003. She was diagnosed with a febrile illness, dehydration, and low platelet count. Hilda Young, RN, evaluated Kyndall. Nurse Young cared for Kyndall until her shift ended at approximately 11:00 p.m., when Kyndall's care was assumed by Karen Davis, RN.

Conflicting accounts of the night's events were testified to at trial. What can be determined from the record is that on the morning of February 20, 2003, Kyndall suffered a seizure. Soon thereafter she stopped breathing, and "Code Blue" (Code) emergency resuscitative procedures were implemented. Unfortunately, Kyndall could not be resuscitated.

Tapp and Ard, Kyndall's parents, filed suit on behalf of the Estate on September 1, 2004, alleging OMHS and Dr. Russell were negligent in their care and treatment of Kyndall immediately prior to and during her admission to OMHS. A five-day jury trial began on February 11, 2008, to resolve the claims.

At trial, the Estate offered expert testimony from Jane Walker, RN. Nurse Walker opined that there had been several failures, including a crucial delay in calling the Code, on the part of the nurses caring for Kyndall and that these failures fell short of the standard of care expected of them.

OMHS offered the testimony of several experts, including Ann White, RN, and Dr. James Gay. Nurse White testified that both Nurse Young and Nurse Davis complied with the standard of care expected of them in their treatment of Kyndall. Dr. Gay testified that he was familiar with the standard of care expected of hospitals and their nurses in situations faced by the OMHS nurses. He opined that the nurses at OMHS exercised the degree of care and skill expected of them and specifically testified that the Code was called at an appropriate time.

The Estate objected to Dr. Gay's credentials as an expert witness. The trial court overruled the objection.

A jury returned verdicts in favor of OMHS and Dr. Russell. The trial court entered judgment reflecting those verdicts and dismissing the claims. The Estate moved for a new trial against OMHS only. That motion was denied. This appeal followed.

The Estate presents one argument for reversal—the trial court erred by allowing Dr. Gay to testify regarding the nurses' standard of care, contrary to Kentucky law in violation of KRE 702. We disagree.

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

The qualification of a witness as an expert rests within the sound discretion of the trial court. KRE 702 provides that a witness qualified as an expert by knowledge, skill, experience, training, or education may provide opinion testimony if scientific, technical, or specialized knowledge will assist the trier of fact. "Any lack of specialized training goes only to the weight, not to the competency, of the evidence." *Owensboro Mercy Health System v. Payne*, 24 S.W.3d 675, 677 (Ky.App. 1999), *quoting Washington v. Goodman*, 830 S.W.2d 398, 400 (Ky.App.1992).

A trial court's determination as to whether a witness is qualified to give expert testimony under KRE 702 is subject to an abuse of discretion standard of review. *See Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 378 (Ky.2000); *Fugate v. Commonwealth*, 993 S.W.2d 931, 935 (Ky.1999); *Murphy by Murphy v. Montgomery Elevator Co.*, 957 S.W.2d 297, 299 (Ky.App.1997). "An abuse of discretion occurs when a 'trial judge's decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Farmland Mut. Ins. Co.*, 36 S.W.3d at 378 (quoting *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000)).

The specifics of the Estate's argument on appeal differ slightly from that presented to the trial court. At trial, the Estate's only objection was that, because Dr. Gay was not a nurse, he lacked the "training or experience" or "education" to testify as to the standard of care to be met by nurses. This requirement of KRE 702 has been in the rule since its original adoption in 1992. On appeal, however, the Estate focuses on the 2007 amendment to KRE 702 that adds the requirement that the expert testimony be based on "sufficient facts or data," be "the product of reliable principles and methods" and that the witness has "applied those principles and methods reliably to the facts of the case." KRE 702 (2007). We will address each in turn.

The Estate's objection at trial—that because Dr. Gay is not a nurse, he lacks training, education or experience that would make him competent as an expert—is without merit. "Any lack of specialized training goes only to the weight, not to the competency, of the evidence." *Washington v. Goodman*, 830 S.W.2d 398, 400 (Ky.App.1992). Furthermore, there are "numerous reported cases where a physician has been held qualified to express an opinion on medical matters outside his area of expertise." *Owensboro Mercy Health System v. Payne*, 24 S.W.3d 675, 677–78 (Ky.App.1999) (citations omitted). More significantly, however, we do not believe Dr. Gay's testimony was outside his area of expertise. He testified that he is a board certified pediatrician practicing at Vanderbilt University. He completed a pediatric residency at Vanderbilt Children's Hospital in 1981 and, since 1985, not only has he regularly treated children like Kyndall, he has taught his specialty as a faculty member at Vanderbilt, spending the bulk of his work life in that hospital-based practice environment, including the supervision of nurses. Dr. Gay testified that he is familiar with the standard of care expected of hospitals and their nurses under the circumstances faced by the nurses in this case. Such qualifications have been deemed sufficient by this Court to render a physician qualified. *Id.* The trial court found they were sufficient in this case.

On appeal, the Estate modifies its argument. Before us, the Estate points to the additional language of KRE 702 requiring that

(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

KRE 702. The Estate argues that Dr. Gay's testimony did not comply with these requirements. We disagree.

The facts and data upon which Dr. Gay based his opinion were the deposition testimony of all relevant witnesses, including Kyndall's mother, as well as all of the medical records admitted into evidence. Therefore, his testimony was based on sufficient facts or data.

■ The principles and methods Dr. Gay used to assess those facts and data were obtained by Dr. Gay from a career focusing on pediatric patients, including pediatric patients in emergency situations. His education, training and experiences regarding these principles and methods were typical of a traditional medical education in his specialty. He did not urge consideration of a novel method of reacting to the symptoms presented by this particular patient. Therefore, we believe his testimony was the product of reliable principles and methods.

Dr. Gay testified in a manner that evidenced his clear application of these reliable principles and methods to the specific circumstances of Kyndall's case. Cross-examination did not reveal any indication that Dr. Gay applied these principles and methods in any manner other than a reliable one. In sum, we find nothing in Dr. Gay's testimony that fails to meet the standard of KRE 702.

However, the Estate urges us to consider cases from other state jurisdictions holding that physicians are incompetent to testify regarding a nurse's standard of care. To the extent we are urged to adopt

a blanket rule to that effect,[2] we decline to do so and embrace and repeat the approach taken but a few years ago by this Court. "Rather than promulgating a blanket rule, we believe the best approach remains to defer to the trial court to exercise its discretion in the application of KRE 702[.]" Owensboro Mercy Health System at 678.

Furthermore, we believe the authorities cited by the Estate are easily distinguished. *Yacoub v. Lehigh Valley Med. Assocs., P.C.*, 805 A.2d 579 (Pa.Super.Ct.2002), and *Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395 (Minn.1998), readily distinguish themselves from this case because the witnesses in those cases clearly lacked qualification as experts. We address those cases first.

In *Yacoub,* as can be seen in the quote the Estate provides, the proposed expert witness "rarely practiced in a hospital setting [and] could not remember the last time he interacted with nurses[.]" *Yacoub* at 592. Similarly, in *Wall,* neither of the proposed expert witnesses had the "requisite scientific background of medical training or the practical experience in supervising a psychiatric nurse." *Wall* at 405. Conversely, Dr. Gay's testimony indicated both his training in dealing with the medical emergency faced by the OMHS nurses and his practical experience supervising nurses generally.

The Estate also cites *Sullivan v. Edward Hosp.*, 209 Ill.2d 100, 282 Ill.Dec. 348, 806 N.E.2d 645 (2004), in which the Illinois Supreme Court applied what is referred to as a "purely mechanical and formalistic rule." *Dolan v. Galluzzo*, 77 Ill.2d 279, 32 Ill.Dec. 900, 396 N.E.2d 13, 17 (1979)(Ward, J., dissenting). The Illinois

**2.** At oral argument, counsel for the Estate stated that such a blanket rule was not the primary focus of its argument.

Court reaffirmed an earlier draconian holding that "in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein[.]" *Dolan,* 32 Ill.Dec. 900, 396 N.E.2d at 16 (1979)(physician not licensed as podiatrist incompetent to testify). In Illinois then, the baseline qualification of a witness testifying to a nursing standard of care is that the witness hold a nursing license; this is a qualification over which the Illinois trial judge has no discretion. *Sullivan* at 655.

The Illinois approach has been rejected by several courts for a variety of reasons. *Staccato v. Valley Hosp.,* 170 P.3d 503, 506–07 (Nev.2007)("medical provider is not automatically disqualified from testifying against a defendant who specializes in a different area of medicine or who practices in a different medical discipline"); *Marshall v. Yale Podiatry Group,* 5 Conn.App. 5, 496 A.2d 529, 531–32 (1985); *Botehlo v. Bycura,* 282 S.C. 578, 320 S.E.2d 59, 64 (1984)("expert is not limited to any class of persons acting professionally"); *Durfling-er v. Artiles,* 563 F.Supp. 322, 330 (D.C.Kan.1981). We think rejection of this approach is appropriate.

▮ We cannot adopt the Illinois approach because it is contrary to Kentucky's existing rule. *Owensboro Mercy Health System* at 677–78 (citing "numerous reported cases where a physician has been held qualified to express an opinion on medical matters outside his area of expertise."). In Kentucky, expert witness assessment turns on whether the proposed witness's special knowledge, skill, experience, training, or education will assist the jury. KRE 702; *Stringer v. Commonwealth,* 956 S.W.2d 883, 891 (Ky.1997). Therefore, a physician or other medical provider is not automatically disqualified from testifying against a defendant who

specializes in a different area of medicine or who is licensed or practices in a different medical discipline. *Owensboro Mercy Health System, supra.*

The strongest argument for the Illinois approach is that allowing a doctor to testify to the nursing standard of care risks "a higher standard of care being imposed upon the defendant[.]" *Sullivan* at 657, quoting *Wingo v. Rockford Memorial Hosp.,* 292 Ill.App.3d 896, 906, 226 Ill.Dec. 939, 946, 686 N.E.2d 722, 729 (Ill.App. 1997). That, of course, is not a risk in this case since the expert in question was testifying for, and not against, the defendant. If Dr. Gay had, in fact, applied a higher standard, this would have been to the Estate's advantage.

More importantly, we tend to agree with the view that "a separate nursing standard of care governing medical treatment does not exist." *Staccato* at 507. Nurses generally are prohibited from providing medical diagnoses, and they provide treatment only under physician directives or in emergency situations. We believe this is why some federal courts interpreting Federal Rule of Evidence (FRE) 702 have held that "[a] physician's area of expertise necessarily encompasses the standard of care applicable to nurses." *McDowell v. Brown,* 392 F.3d 1283, 1296–97 (11th Cir. 2004) (citations omitted); *see also,* KRE 702, Evidence Rules Review Commission Notes (2007)("The 2007 amendment to Kentucky Rule of Evidence, Rule 702 is designed to follow the development and adopts exact language set by the Federal Rules."). Kentucky's view of the standard of care in this situation is less circumscribed than the Estate urges. Here, Dr. Gay's expertise is best expressed as knowledge of "the measures required to prevent medical tragedy." *Owensboro Mercy*

*Health System* at 678. We have no doubt that Dr. Gay was competent to testify regarding those measures and that such testimony assisted the jury in its deliberations. Thus, we do not find the trial court abused its discretion in finding Dr. Gay competent to express an opinion on the standard of care in this case.

For the foregoing reasons, the judgment of the Daviess Circuit Court is affirmed.

ALL CONCUR.