

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00074-CV

_____

IN THE INTEREST OF K.A.N.C.
AND N.A.K.C., CHILDREN

On Appeal from the County Court at Law #1
Gregg County, Texas
Trial Court No. 2013-1530-DR

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

After a bench trial, Shelia's parental rights to two-year-old K.A.N.C. and to one-year-old N.A.K.C.[1] were terminated on August 5, 2014. The termination order was based, among other things, on Shelia's failure "to comply with the provisions of a court order that specifically established the actions necessary for [Shelia] to obtain the return of the children . . . ." The order also indicates that, based on clear and convincing evidence, termination of the parent-child relationship was in the children's best interests. We affirm the trial court's order because (1) the denial of Shelia's extension request was proper and (2) sufficient evidence established that termination was in the children's best interests.

## I. Background

The Department of Family and Protective Services (the Department) received an initial intake on Shelia in July 2013 stemming from concerns regarding Shelia's mental health and the concomitant risk related to her newborn child, N.A.K.C. At that time, Shelia reported feelings of depression and complained of chaos within her family and in her relationship with the children's father.

On her release from the hospital following N.A.K.C.'s birth, Shelia and the children lived with Shelia's mother. Shelia was unemployed. In a separate investigation of Shelia's mother, the Department discovered that the mother was using illegal drugs in the home while the children were present. Thereafter, in August 2013, the children were removed from the home, the

---

[1]We refer to appellant as "Shelia" and to the children by their initials in order to protect the identities of the children. *See* TEX. R. APP. P. 9.8. The children's father voluntarily relinquished his parental rights and is not a party to this appeal.

Department was named temporary managing conservator of the children, and a family service plan was instituted with the permanency goal of family reunification. By its terms, the plan was scheduled to be completed on August 11, 2014.[2]

In October 2013, eighteen-year-old Shelia underwent psychological testing by Dr. Winsted pursuant to a court order. Dr. Winsted's report discloses that Shelia was physically abused and neglected as a child and lacked a positive role model from which she could learn the essential parenting skills necessary to raise two small children. Shelia evidenced "clinically significant symptoms of anxiety, depression, posttraumatic symptomatology, thought confusion, social phobia, and withdrawal." Additionally, Shelia was suffering significant personal distress and manifested symptoms of "Avoidant, Borderline, Paranoid, Schizoid and Schizotypal Personality traits with depressive and passive aggressive features." Although Shelia expressed an understanding of the importance of placing her children's needs above her own, that understanding was not apparent in Shelia's treatment of the children. Shelia completed the eighth grade with no further education or training, had no occupational history, and was experiencing financial problems. As a result, "[Shelia] would likely have difficulty meeting the

---

[2]The family service plan required that Sheila complete the following tasks: (1) obtaining mental-health treatment through Community Healthcore or a private doctor, (2) seeking and maintaining legally verifiable employment, (3) attending at all court hearings and meetings regarding the children, (4) obtaining a GED by participating in classes through the Literacy Council, (5) completing required Department paperwork, (6) participating in random drug screens, (7) participating in drug rehabilitation and drug counseling on failure of a drug screen, (8) demonstrating ability to arrange and keep appointments with providers listed on the plan, (9) maintaining a safe and stable home for at least six months for herself and the children, (10) participating in individual counseling with Stenet Frost, (11) participating in parenting classes offered at the Child Protective Services (CPS) office, (12) participating in a psychological evaluation with Dr. Don Winsted, and (12) participating in Dr. Winsted's therapeutic parenting classes.

3

practical needs of her children," and was noted by Dr. Winsted to have an inadequate support system.[3]

Although the family service plan was implemented on August 16, 2013, Shelia had only completed the required psychological evaluation and begun counseling sessions by December 2013.[4] She failed to participate in Winsted's parenting group and did not complete her GED. Shelia was able to obtain employment at Walmart for a short period of time, but was unable to maintain that employment. Shelia was, however, able to secure her own residence, although it was sparsely furnished, with no stove or refrigerator. A potentially dangerous gas spigot protruded from the residence's floor, and there were cables on the floor which were also potentially dangerous to the children. Shelia was eventually able to place a refrigerator in the residence, although the refrigerator was infested with roaches and the water supply had been turned off. Jennifer Sipes, Shelia's conservatorship worker, opined that, as of July 10, 2014, Shelia's home was not a safe and stable environment for the children.

By the time of trial on August 4, 2014, Shelia had made additional progress toward completing the goals set out in her family service plan. She had completed the required parenting classes at the CPS office and had participated in approximately eight counseling sessions. Shelia was re-employed at Walmart and had rented a new apartment with a scheduled move-in date of August 8, 2014. Shelia visited her children regularly.

---

[3]Shelia and the children were initially living with Shelia's mother. In its most recent investigation of Shelia's mother, the Department concluded that the mother tested positive for cocaine and that she admitted to using marihuana in the home she shared with Shelia and her grandchildren.

[4]Shelia also saw a physician regarding medication for her mental health issues. However, because Shelia was pregnant at the time of this appointment, she was prescribed no medication.

Although drugs were never an issue for Shelia, she was aware that both her mother and her grandmother used marihuana, and she left the children with her mother in spite of this knowledge. After the birth of N.A.K.C., Shelia also began a relationship with a new partner who was arrested in April 2014 for a parole violation.

## II. Standard of Review

The burden of proof in parental-rights termination proceedings is clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2003). The evidence is clear and convincing when the proof is such that it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established by the State. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

In a legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder could reasonably have formed a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.). We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, that it disregarded evidence that a reasonable fact-finder could have reasonably disregarded, and that it disbelieved the testimony of any witness whose credibility could reasonably be doubted. *J.P.B.*, 180 S.W.3d at 573.

In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). If, in weighing the disputed evidence, the fact-finder could have reasonably resolved the

conflicts to form a firm conviction that allegations concerning the grounds for termination were true, then the evidence is factually sufficient, and the termination findings must be upheld. *Id*. at 18–19. In applying this standard in light of the "clear and convincing" language required by Section 161.001 of the Texas Family Code, we must be careful not to "'be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt.'" *In re R.A.L.*, 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.) (quoting *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)).

### III.    Denial of Extension Request Was Proper

The Texas Family Code sets forth strict guidelines governing the Department's prosecution of  actions to terminate parental rights or to have the Department designated conservator. *See* TEX. FAM. CODE ANN. § 263.401 (West 2014). Termination suits must be dismissed on the first Monday after the first anniversary of the date the Department was appointed temporary managing conservator. *Id*. Although the trial court has the discretion to grant a one-time 180-day-extension of this statutory deadline, such extension may only be granted based on proof of extraordinary circumstances:

> Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a).

TEX. FAM. CODE ANN. § 263.401(b). If the court does not make specific findings of extraordinary circumstances, the court is not permitted to retain the suit on its docket past the

6

one-year time frame. *In re Dep't of Family & Protective Serv.*, 273 S.W.3d 637, 643 (Tex. 2009). The trial court's ruling on an extension request under Section 263.401(b) is reviewed under an abuse of discretion standard. *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied); *In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008), *pet. denied*, 260 S.W.3d 462 (Tex. 2008) (per curiam). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 620 (Tex. 2007).

On July 10, 2014, the trial court conducted a hearing on Shelia's motion for an extension of the one-year dismissal date of August 11, 2014. The request was based on Shelia's need to complete the family service plan and to improve the living conditions of her home for the children. Shelia indicated that she could meet the Department's expectations if given additional time.[5]

Shelia acknowledges that, typically, a parent's tardy compliance with a family service plan does not constitute extraordinary circumstances. *See In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied) (failure to begin complying with family service plan until several weeks before trial does not constitute extraordinary circumstance when requirements necessary to obtain child's return were known well in advance); *Shaw v. Tex. Dep't of Family & Protective Servs.*, No. 03-05-00682-CV, 2006 WL 2504460, at *8 (Tex. App.—Austin Aug. 31,

---

[5]Since the time of the previous hearing in May 2014, Shelia had switched jobs from Walmart on Estes Parkway to Walmart on Fourth Street. Shelia had also obtained various additional items for her home, as requested by the Department.

2006, pet. denied) (mem. op.) (failing to make progress on service plan for eight months did not amount to "extraordinary circumstances" that authorized continuance).

Here, however, Shelia maintains that her initial starting point for implementation of the service plan constitutes extraordinary circumstances. She cites to the fact that she was only eighteen years old when the plan was thrust upon her and that she had never before been required to provide a home and support to any children (on her own) prior to this case. Shelia also cites to her limited education and argues that to expect her to obtain employment with appropriate income and a home for her children in less than a year was "essentially asking the impossible."

There is no doubt that the service plan was aggressive and presented some difficult hurdles for Shelia. She proved, though, that she was able to comply with its requirements when she chose to do so. Further, Shelia was provided with information that would have enabled her to receive necessary support and assistance, including food stamps, WIC, Medicaid, medical transportation, bus service for rural transportation, counseling, and help with budgeting. Shelia cites no authority to support her proposition that a parent's age and family background constitute extraordinary circumstances sufficient to permit the children to remain in foster care.

The determination of whether to grant an extension in a case such as this must be centered on the children's best interests. *See* TEX. FAM. CODE ANN. § 263.401(b); *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied). At the time of the hearing in this case, the children had been in foster care for almost an entire year. The trial court declined to extend that period for another six months. Shelia was made aware of the requirements necessary for the return of the children in August 2013, but made little progress in fulfilling

8

those requirements until only weeks before trial. Under these circumstances, we cannot conclude that the trial court's refusal to grant Shelia's extension request was an abuse of discretion.

## IV. Sufficient Evidence Established that Termination Was in the Children's Best Interests

To uphold the termination finding, we must also determine whether the Department proved, by clear and convincing evidence, that termination of Shelia's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001. There is a strong presumption that a child's interest is best served by preserving conservatorship in the natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *J.L.B.*, 349 S.W.3d at 848. That presumption can be overcome, however, with clear and convincing evidence to the contrary. *R.R.*, 209 S.W.3d at 116; *J.L.B.*, 349 S.W.3d at 848.

A number of factors may be considered in determining the best interest of the child, including

> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). This list is not exclusive, and there is no requirement that any unique set of factors be proven. *Id.* Certainly, it is not necessary to prove all nine factors. *C.H.*, 89 S.W.3d at 27. The analysis of undisputed evidence relating to one factor may be

9

adequate in a particular situation to support a finding that termination is in the best interest of the child. *In re K.W.*, 335 S.W.3d 767, 770 (Tex. App.—Texarkana 2011, no pet.) (quoting *In re J.A.W.*, No. 06-09-00068-CV, 2010 WL 1236432, at \*4 (Tex. App.—Texarkana Apr. 1, 2010, pet. denied) (mem. op.)). Additionally, evidence supporting the termination of parental rights is also probative of best interest. *C.H.*, 89 S.W.3d at 28.

Due to the young ages of K.A.N.C. and N.A.K.C., their desires cannot be determined. The testimony indicates, however, that the children have been well cared for by the foster family with whom they had been living at the time of trial for almost a year. The children have bonded with the foster family, and the foster family has expressed an interest in adopting the children. From this evidence, the trial court could infer that the children would prefer to remain in this stable, loving environment. *See In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (considering evidence that child was well cared for by foster family, had bonded with family members, and spent minimal time with parent in assessing toddler's desires).

Several factors weigh against Shelia's expressed desire to maintain her parental relationship with the children. Foremost among these are the children's present and future physical and emotional needs. The trial court found that Shelia both (1) "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children"[6] and (2) "engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or

---

[6]*See* TEX. FAM. CODE ANN. § 161.001(1)(D).

10

emotional well-being of the children."[7] Shelia did not dispute these findings on appeal; to the contrary, her trial testimony establishing that she permitted the children to remain with her mother and grandmother, both of whom smoked marihuana in the home actually supports the trial court's finding. Moreover, Shelia did not acknowledge that this was a poor decision which could endanger the children; instead, she testified that this was a good decision on her part, explaining that marihuana "didn't have nothing on her watching them . . . ." As past is often prologue, the trial court could have formed a firm belief or conviction that Shelia's past endangering conduct would recur if the children were returned to her. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.) (trier of fact may infer parent's past endangering conduct may recur in future, upon child's return to parent).

Other evidence indicated that, in spite of documented mental health issues, Shelia failed to seek counseling or long-term therapy for her mental health issues. Winsted testified that this failure was a recipe for neglect and further opined that Shelia was at a high risk for abusing and/or neglecting the children. Sipes testified that Shelia "did not make significant progress on her family plan to alleviate the risk of abuse and neglect in her home." The evidence showed that Shelia failed to comply with her court-ordered service plan relating to her mental-health issues as well as other requirements such as providing a safe home for the children.

During the one-year time frame in which Shelia had the opportunity to diligently work her service plan for the purpose of being reunited with her children, she was, instead, occupied

---

[7]*See* TEX. FAM. CODE ANN. § 161.001(1)(E).

with such endeavors as engaging in a physical altercation,[8] seeking out a new boyfriend who has since been returned to prison on a parole violation, and becoming pregnant with a third child. And, although Shelia made a last-minute effort to fulfill her service plan obligations, the totality of these decisions reflects repeated poor judgment and irresponsible choices and provides a basis on which the trial court could have concluded that Shelia could not adequately provide for the children's physical and emotional needs, now and in the future, and that she lacked essential parenting skills and abilities. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.) (lack of parenting skills, income, home and unstable lifestyle considered in determining parent's ability to provide for child's physical and emotional needs); *In re J.O.A.*, 282 S.W.3d 336, 346 (Tex. 2009) (considering parent's history of irresponsible choices in best interest determination).

Shelia could not articulate any discernable plans for her children and could not provide them with a safe and suitable home. Instead, Shelia continued to live with her mother and failed to appreciate the gravity of the situation with which she was faced.

Based on this record, under the standards as set out above, we conclude that there is both legally and factually sufficient evidence to allow the trial court to determine that the children's best interests were served by the termination of Shelia's parental rights. Therefore, Section 161.001(2) of the Texas Family Code has been met. *See* TEX. FAM. CODE ANN. § 161.001(2).

---

[8]This evidence is reflected in a Facebook post in which Shelia stated, "Jst had a fight still lookn Gud no marks r nun but Ido got bald stops tho lol"

## V. Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted: December 11, 2014
Date Decided: December 23, 2014