RENDERED:  JANUARY 9, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1173-MR

SANDRA BROWN AND VERON
BROWN                                                            APPELLANTS


                APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE WILLIAM ANTHONY KITCHEN, JUDGE
                       ACTION NO. 18-CI-00246


THE ESTATE OF JOHN RYAN AND
MERIDIAN SECURITY INSURANCE
COMPANY                                                            APPELLEES


                            OPINION
                            AFFIRMING

                       ** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE:  Sandra and Veron Brown appeal from the pretrial

dismissal of their claims for medical bills and pain and suffering which they

alleged stem from a motor vehicle accident.  We affirm.

# FACTS

Veron Brown and John Ryan were driving vehicles which collided on December 11, 2015. Sandra Brown was riding in the vehicle driven by Veron Brown. In March 2018, Veron and Sandra Brown (collectively, "the Browns") filed a lawsuit, alleging they were injured in the collision.[1] The Browns asserted a negligence claim against John Ryan.[2]

The parties engaged in discovery. John Ryan died in August 2021. In July 2022, the circuit court granted the Browns' application to revive the action, and the administrator of John Ryan's estate was substituted for the decedent. Henceforth, we will refer to the administrator and estate as simply "Ryan".

In July 2023, the Browns filed a motion to set the case for trial. That September, the circuit court entered an order setting a late August 2024 trial date and establishing deadlines for various pretrial steps. For example, the Browns were required to identify expert witnesses by early March 2024 and discovery was to be completed by early June 2024. The parties were also required to file motions *in limine* and dispositive motions by late June 2024. The order also required the

---

[1] The parties have not raised any issues about the statute of limitations in their appellate briefs.

[2] The Browns claimed they were entitled to recover from their insurance carrier, Meridian Security Insurance Company, if John Ryan was uninsured or underinsured. They also asserted claims of alleged Unfair Claims Settlement Practices Act violations by John Ryan's insurance carrier, which were later dismissed by agreed order.

parties to file trial briefs, which identified witnesses and summarized expected testimony, in July 2024.

In March 2024, the Browns filed their expert disclosures—which indicated they might call various treating physicians, along with a massage therapist who had treated Sandra Brown ("Sandra").

In July 2024, the Browns filed their trial brief. Unlike their expert disclosure, their trial brief listed no doctors as witnesses, although it indicated Sandra's massage therapist would testify. It also stated that medical records would be read into evidence. The Browns' counsel also emailed Ryan's counsel with a weblink containing the medical records they anticipated reading at trial.

Several days later, Ryan filed a Motion for Directed Verdict. Ryan argued the Browns had presented no evidence "that any medical bills they claim as damages" were "reasonable charges" for "reasonably needed products, services and accommodations," quoting KRS[3] 304.39-020(5)(a).[4] (Record on Appeal ("R") p. 346.) Ryan also disputed the Browns' assertion that medical records could simply be read into evidence. Even assuming the medical records were admissible, Ryan contended the Browns had no proof that the medical diagnoses or treatments listed in the records were causally related to the December 2015 collision.

---

[3] Kentucky Revised Statutes.

[4] KRS 304.39-020(5)(a) defines the term *medical expense* for purposes of the Kentucky Motor Vehicle Reparations Act ("MVRA"), which is set forth at KRS 304.39-010 *et seq*.

Ryan pointed out that Sandra and Veron Brown ("Veron") did not report injuries at the accident scene and did not seek medical treatment for a few days. Ryan further noted that, according to one medical record, Veron went to a medical provider two months after the accident where he reported pain in both shoulders and stated that only the right shoulder pain stemmed from the December 2015 collision. Ryan also asserted the records showed no opinion expressed by any medical professional about the causation of the medical complaints noted in these records. Without expert medical testimony, Ryan contended that the medical records were not sufficient to prove causation and that the Browns' claims should not be submitted to a jury.

The Browns filed a response to Ryan's motion. They asserted that their medical records were properly admissible under KRE[5] 803.[6] They also contended it was not necessary to present live witness testimony to authenticate the medical records, citing KRE 902(11).[7]

In mid-August 2024, about a week before the scheduled trial date, the circuit court held a hearing on Ryan's motion. The circuit judge expressed

---

[5] Kentucky Rules of Evidence.

[6] KRE 803 provides that even though the declarant is available as a witness, certain enumerated types of statements do not have to be excluded under hearsay rules, including statements for purposes of medical treatment or diagnosis and records of regularly conducted activities (often called business records).

[7] KRE 902(11) concerns the self-authentication of business records.

-4-

concerns that it would not be appropriate to consider a motion for directed verdict prior to the presentation of any proof at trial. The judge suggested that perhaps the motion was essentially a motion for summary judgment.

Ryan's counsel indicated that his client would not care whether the motion was considered as motion for directed verdict under CR[8] 50.01 or a motion for summary judgment under CR 56. He asserted the Browns had not provided an itemization of their medical bills and could not meet the threshold for tort recovery under the MVRA set forth in KRS 304.39-060(2)(b).[9]

---

[8] Kentucky Rules of Civil Procedure.

[9] KRS 304.39-060(2) provides in pertinent part:

> (2) (a) Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is "abolished" for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor, or that would be payable but for any deductible authorized by this subtitle, under any insurance policy or other method of security complying with the requirements of this subtitle, except to the extent noneconomic detriment qualifies under paragraph (b) of this subsection.
>
> (b) In any action of tort brought against the owner, registrant, operator or occupant of a motor vehicle with respect to which security has been provided as required in this subtitle, or against any person or organization legally responsible for his or her acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of bodily injury, sickness or disease arising out of the ownership, maintenance, operation or use of such motor vehicle only in the event that the benefits which are payable for such injury as "medical expense" or which would be payable but for any exclusion or deductible authorized by this subtitle exceed one thousand dollars ($1,000), or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this

Ryan's counsel also argued that the Browns could not show that the collision caused them injuries necessitating the medical treatment they received without medical testimony. He asserted the medical records provided by the Browns did not reflect any medical professional's opinion about medical causation. He argued that, at most, some records reflected Veron's lay opinion about the cause of his symptoms—for example, one record stated Veron believed his left shoulder pain was not related to the collision, but his right shoulder pain was. Ryan's counsel pointed out Sandra's records did not even mention the auto accident.

The Browns' counsel disagreed with his opposing counsel's arguments. He argued that Kentucky precedent, as well as precedent from other states, indicated that medical records could be admitted without testimony from doctors. He also noted the Browns would be presenting the testimony of Sandra's massage therapist, who he asserted had the experience and expertise to testify to her muscle spasms being consistent with the symptoms experienced by others following similar motor vehicle collisions. He suggested that the records, along with testimony from the Browns and Sandra's massage therapist, could show the auto accident led to the medical conditions for which the Browns sought treatment.

subsection upon a showing that the medical treatment received has an equivalent value of at least one thousand dollars ($1,000).

-6-

The judge indicated that he agreed with the Browns that the medical records were admissible as an exception to the hearsay rule. However, even though he deemed the records admissible, the judge expressed concerns about whether the Browns could prove causation based on the medical records alone without medical expert testimony.

The judge appeared to spend some time carefully reviewing the records and precedent cited by the parties based on our viewing of the hearing recording. However, the judge ultimately stated that he did not believe the Browns could prove causation or even show a genuine issue of material fact on causation. So, the judge concluded it was appropriate to grant Ryan's motion and asked Ryan's counsel to draft an order.

A couple of days later, the circuit court entered an order—which it deemed final and appealable with no just cause for delay—granting the motion for dismissal of claims against Ryan. This order provided in pertinent part:

> Defendant, The Estate of Ryan, having moved the Court to dismiss Plaintiffs' [the Browns'] claims pursuant to CR 50.01 and CR 56.02, based on discovery having closed and Plaintiffs having no suitable and necessary causation or relatedness testimony to present at trial with respect to claimed medical bills, Plaintiffs having had the opportunity to respond, the Court having heard oral argument from the parties on August 14, 2024, and the Court being otherwise duly and sufficiently advised, it is HEREBY ORDERED THAT Defendant's [Ryan's] Motion is Granted.

> IT IS FURTHER ORDERED THAT Plaintiffs' claims
> for medical bills are DISMISSED, with prejudice. IT IS
> FURTHER ORDERED THAT Plaintiffs' claims for pain
> and suffering likewise fail pursuant to KRS 304.39-
> 060(2)(b) and are dismissed, with prejudice.

(R, p. 382. *See also* Appendix to Appellant Brief.)

The Browns filed a timely appeal.

## ANALYSIS

Despite Ryan's motion being styled as one for a directed verdict and the mention of both CR 50.01 and CR 56.02 in the order granting the motion, we agree with the circuit judge's oral statement that the motion was essentially one for summary judgment. Generally, motions for directed verdict occur during trial, often "at the close of the evidence offered by an opponent[.]" CR 50.01. On the other hand, a defense motion for summary judgment may be filed "at any time" pursuant to CR 56.02, although practically always before trial. After all, a valid grant of summary judgment results in no trial taking place due to lack of triable issues. *See Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) ("It clearly is not the purpose of the summary judgment rule, as we have often declared, to cut litigants off from their right of trial if they have issues to try.").

The motion at issue here was filed before the Browns presented any evidence at trial, so we consider it to be a motion for summary judgment.

## Standard of Review

In reviewing the grant of summary judgment, we must consider whether the record in its entirety shows that genuine issues of material fact did not exist and that the moving party was entitled to judgment as a matter of law. *Motorists Mutual Insurance Company v. First Specialty Insurance Corp.*, 706 S.W.3d 120, 124 (Ky. 2024). *See also* CR 56.03. Moreover, in conducting our review, we must view the record in the light most favorable to the opposing party and resolve all doubts in his or her favor. *Isaacs v. Sentinel Insurance Company Limited*, 607 S.W.3d 678, 680-81 (Ky. 2020).

Because a grant of summary judgment involves only questions of law and a determination of whether genuine issues of material fact exist, our review is *de novo*—meaning without deference. *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016).[10]

### Circuit Court Properly Granted Summary Judgment as the Browns Could Not Prove Causation Based on the Medical Records Here and Lay Testimony

In their initial appellant brief, the Browns argue the circuit court erred in excluding opinions stated in their medical records. However, as Ryan's brief

---

[10] Even if we reviewed the grant of the motion as a directed verdict instead, the result would not change. Whether reviewing a directed verdict or a grant of summary judgment, the evidence should be viewed in the manner most favorable to the opposing party. *See Isaacs*, 607 S.W.3d 680-81; *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 215 (Ky. App. 2009). And we recognize that a similar level of proof is needed to defeat a motion for summary judgment or for directed verdict. *See generally Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 284-85 (Ky. 2014).

points out, the circuit court never ruled that the medical records were not admissible. The order on appeal does not explicitly exclude the records. Also, the circuit judge orally stated at the hearing that he believed the records were admissible as exceptions to the hearsay rule.

Moreover, Ryan correctly asserts that the admissibility of medical records without medical expert testimony is not a novel issue of first impression in this Commonwealth. Indeed, binding precedent from our Supreme Court makes clear that trial courts have discretion to determine whether to admit medical records without accompanying medical expert testimony. *Young v. J.B. Hunt Transp., Inc.*, 781 S.W.2d 503, 508-09 (Ky. 1989). Although KRS 422.300 makes it easier to authenticate copies of hospital medical records and trial courts have discretion to admit medical records without medical testimony, trial courts are not required to admit such medical records simply because they are authenticated and can properly exclude the records if their probative value is outweighed by risks of confusion of the issues or undue prejudice to the other party. *Id.* at 508.[11]

Here, although the circuit court viewed the medical records as being admissible, its written order states it granted summary judgment for Ryan because of the lack of "suitable and necessary causation or relatedness testimony to present at trial with respect to claimed medical bills." Although this order does not

---

[11] *See also generally Raap v. Taylor*, No. 2016-CA-000270-MR, 2017 WL 3971622, at *3-4 (Ky. App. Sep. 8, 2017) (unpublished).

-10-

explicitly state that expert witness testimony was required to prove causation, given the facts and circumstances of this case, we construe the order as ruling that expert medical testimony was necessary for the Browns to show causation.

In response to Ryan's argument that expert medical testimony was required to show causation or consequent injury, the Browns assert in their reply brief that the circuit court relied heavily on cases which failed to fully consider KRE 803(6)—namely, *Baylis v. Lourdes Hospital, Inc.*, 805 S.W.2d 122 (Ky. 1991) and *Jarboe v. Harting*, 397 S.W.2d 775 (Ky. 1965). We also note these two cases predate the adoption of KRE 803 and involved claims of medical malpractice rather than claims of negligence arising from a motor vehicle accident.

While this case does not involve claims of medical malpractice, some Kentucky precedent indicates that expert medical testimony is usually necessary to establish medical causation in other contexts as well—including workers' compensation claims. *See Kelly Contracting Co. v. Robinson*, 377 S.W.2d 892 (Ky. 1964). Moreover, recent binding precedent from our Supreme Court indicates that even for "ordinary negligence" claims (as opposed to medical negligence or malpractice claims), expert medical testimony is usually necessary to show that the accident at issue caused the injury. *See Saint Elizabeth Medical Center, Inc. v. Arnsperger*, 686 S.W.3d 132 (Ky. 2024).

When a patient (Arnsperger) returned to the hospital for X-rays following a surgery to repair an injured ankle, a staffer pushed Arnsperger in a wheelchair and the wheelchair collided with a desk. *Id.* at 135-36. Arnsperger alleged that his ankle was "rammed" into the desk during the collision and that the impact resulted in a displaced ankle fracture and the dislodgement of a recently placed surgical screw. *Id.* at 136. Arnsperger filed suit against the hospital, alleging negligence on the part of the hospital staffer who had transported him in the wheelchair. He also alleged negligent failure to train and supervise and independent negligence on the hospital's part. *Id.*

Noting Arnsperger consistently asserted he was alleging simple negligence rather than medical malpractice,[12] our Supreme Court recognized that ordinary negligence claims to recover for personal injury also required expert medical testimony to establish causation except in unusual cases. *Id.* at 139-40.

The Kentucky high court also held that given Arnsperger's complex medical history and recent surgeries, determinations of whether the desk collision caused the displacement were beyond the realm of laypersons' common knowledge. *Id.* at 140-41. Moreover, even assuming the claims were not for

---

[12] In our decision, which was later reversed by the Supreme Court, this Court characterized Arnsperger's claims alleging injury from the wheelchair/desk collision as having "more in common with a vehicle collision negligence case" than with a medical malpractice case. *Arnsperger v. Saint Elizabeth Medical Center, Inc.*, No. 2021-CA-0115-MR, 2022 WL 2279901, at *3 (Ky. App. Jun. 24, 2022) (unpublished).

medical malpractice, our Supreme Court noted that causation was disputed and that the circuit court had discretion to determine if expert medical testimony was necessary to establish causation. *Id.* at 141.

Ultimately, our Supreme Court reinstated the summary judgment granted by the circuit court, which was based on Arnsperger's failure to identify a medical expert who would testify that the displacement was caused by the desk collision—in contrast to the defense's identifying an expert who provided a medical opinion that the displacement was not caused by the desk collision. *Id.* Our Supreme Court held that the mere occurrence of the desk collision could not establish causation, considering the recent surgery "and its disputed result." *Id.*

Despite this recent precedent reflecting that expert medical testimony is usually necessary to establish causation of medical injuries, the Browns contend in their reply brief [13] that expert medical testimony was not necessary to establish causation here:

> Injury causation in cases involving soft tissue injuries, as
> here, is often within the jury's understanding. The
> injuries were consistent with those sustained in motor
> vehicle collisions and followed closely on the heels of the
> accident. Under Kentucky law, expert testimony is not

---

[13] We leniently review the Browns' reply brief arguments about whether they could prove causation because these are responses to appellee brief arguments—though long-standing precedent indicates that the reply brief is not the proper place to raise new issues which are essential to the appeal and which could have been raised in the appellant brief. *See generally Milby v. Mears*, 580 S.W.2d 724, 727-28 (Ky. App. 1979).

required in cases where causation is within common knowledge.

Reply Brief, page 3-4.

The Browns are correct that at least some Kentucky precedent indicates that expert medical testimony may not always be required to show causation of certain injuries.[14] For example, in *Tatham v. Palmer*, 439 S.W.2d 938 (Ky. 1969), the Kentucky high court upheld an award of damages for a man who reported headaches and nervousness after a car accident in which he struck his head, despite a lack of medical opinion testimony that the headaches and nervousness were caused by the accident. *Id.* at 938-40.

While it did not deny that expert medical testimony is necessary to show causation for matters outside the realm of common knowledge, the Kentucky court concluded it was common knowledge: "that a severe blow to the head will cause headaches and that severe shock, such as Palmer apparently had as a result of his accident, will produce nervousness as that claimed by Palmer." *Id.* at 939.

---

[14] In arguing that certain medical conditions do not require expert medical testimony about causation, the Browns cited *Tapp v. Owensboro Medical Health System, Inc.*, 282 S.W.3d 336 (Ky. App. 2009). However, *Tapp* was not on point for this argument by the Browns and instead concerned whether a doctor could testify to the standard of care for a nurse. *Id.* at 339-41.

We urge counsel to take greater care to provide accurate citations to supporting authority in the future. It is not our job to research or construct arguments for the parties, and alleged errors may be waived for failure to cite supporting authority. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005).

-14-

Though the causation of some medical conditions may be within the common knowledge of laypersons according to precedent such as *Tatham v. Palmer*, that does not mean that the causation of all medical conditions is a matter of common lay knowledge. For example, our Supreme Court rejected any assertions that laypersons could determine as a matter of common knowledge that Arnsperger's displaced ankle fracture was caused by the desk collision, especially given Arnsperger's recent surgery and complicated medical history. 686 S.W.3d at 140-41. Moreover, in reinstating the grant of summary judgment for lack of expert medical testimony on causation, our Supreme Court stated: "The necessity of expert testimony [to prove causation] is an evidentiary question committed to the sound discretion of the trial judge." *Id*. at 141 (citing *Young*, 781 S.W.2d 503).

To the extent that the circuit court here determined that expert testimony was necessary to prove causation of the Browns' injuries, we detect no abuse of discretion by the circuit court. While perhaps the Browns' medical history may not be as complicated as that noted in *Arnsperger*, the Browns' medical records do not indicate that they simply suffered from headaches or nervousness due to the accident as in *Tatham v. Palmer*.

Moreover, while the Browns' reply brief simply states they suffered soft tissue injuries, their medical records refer to several different medical complaints and diagnoses—often expressed in medical terms which would not be

in a typical layperson's vocabulary.[15]  Also, the fact that Veron himself reported, according to the history noted in a record, that pain in one shoulder was from the car accident and that shoulder pain on the other side did not stem from the accident indicates that car accidents are not always the only cause of shoulder pain.  And other than some records' noting Veron's reports of what may have caused pain or what had happened shortly before certain symptoms arose, no statements about the causation of the Browns' medical complaints appear in their records.  Notably, the vehicle collision is not even mentioned in Sandra's records.

Even construing these medical records in the light most favorable to the Browns, there are no medical opinions expressed in these records about the causation of their various medical complaints.  Furthermore, given the usage of medical terms outside a layperson's common knowledge in these records, we cannot fault the circuit court for evidently perceiving that presentation of these records without accompanying medical testimony could not effectively prove causation.  Though we recognize the Browns and Sandra's massage therapist planned to testify and might offer some context about the Browns' symptoms, we discern no reversible error in the circuit court's concluding such non-medical

---

[15] Based on those records attached to the initial appellant brief, these terms include cervical radiculopathy, spondylosis, posterior disc osteophyte complex, stenosis, and spondylolisthesis.

-16-

testimony could not establish that the vehicle collision was the cause of their medical complaints.[16]

Additionally, as the time for further discovery and identification of witnesses had long since closed, it was practically impossible for the Browns to present medical expert testimony at trial to show that their medical complaints were caused by the vehicle collision. *See Steelvest*, 807 S.W.2d at 482 ("Only when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted."). *See also Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992) ("We accept that 'impossible' is used in a practical sense, not in an absolute sense."). Given the lack of expert medical testimony to explain the content of the medical reports, much less provide opinions about causation in the Browns' favor, Ryan was entitled to judgment as a matter of law.

In sum, reading the medical records alone might, at most, suffice to allow the jury to conclude that the Browns suffered from the medical conditions discussed in those records. However, reading those records without accompanying

---

[16] Our Supreme Court has made clear that only medical doctors may testify to medical causation. *See Renot v. Secura Supreme Insurance Company*, 671 S.W.3d 282, 291 (Ky. 2023) ("while biomechanical experts may be qualified to testify about a typical or expected range of potential physical or medical outcomes resulting from the forces incurred in a collision or accident, they may not venture into the territory of medical causation, a province whose dominion is reserved to medical doctors alone"). A massage therapist is not a medical doctor.

expert medical testimony would be insufficient to allow the jury to conclude the Browns' conditions mentioned in the records were caused by the collision.

Thus, the circuit court properly granted summary judgment in Ryan's favor. Further arguments raised in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal. We specifically decline to address non-binding precedent from other states' courts since there is controlling Kentucky precedent on point.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David V. Oakes
Paducah, Kentucky

BRIEF FOR APPELLEE ESTATE OF JOHN RYAN:

Christopher M. Mussler
Hunter E. Rommelman
Louisville, Kentucky

BRIEF FOR APPELLEE MERIDIAN SECURITY INSURANCE COMPANY:

Benjamin R. Talley
Jack N. Lackey, Jr.
Hopkinsville, Kentucky